# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JACQUELINE STEINMETZ,

    Plaintiff

v.

AMERICAN HONDA FINANCE, et al.,

    Defendants

Case No.: 2:19-cv-00067-APG-EJY

**Order (1) Granting Experian Information Solutions and American Honda Finance Corporation's Motions to Dismiss and (2) Granting Motions to File Supplemental Authority**

[ECF Nos. 37, 47, 105, 112]

This case arises from disputes over the reporting of plaintiff Jacqueline Steinmetz's credit information by furnishers and consumer reporting agencies (CRAs), including the remaining defendants, Experian Information Solutions, Inc. (Experian), American Honda Finance Corporation (American Honda), and JPMorgan Chase Bank, N.A. (Chase).[1]  Experian and American Honda each move to dismiss all claims against them.  Experian also moves to file supplemental authority in support of its motion to dismiss.  For the following reasons, I grant the defendants' motions.

## I. Background

### A. Steinmetz's Bankruptcy

Steinmetz filed for Chapter 13 bankruptcy on June 30, 2016. ECF No. 28 at 7.  At that time, Steinmetz had a mortgage from Select Portfolio Servicing, LLC (SPS) and an auto loan from American Honda. *Id.* at 8.  She also had outstanding balances from several creditors. *Id.* Steinmetz's Chapter 13 plan was confirmed on February 15, 2017. *Id.* at 8.  The plan required

---

[1] The defendants were incorrectly named American Honda Finance and Chase Card.  I have incorporated their appropriate names in this order.

Steinmetz to continue making direct payments to SPS and American Honda. *Id.* Steinmetz's bankruptcy was discharged on July 16, 2017. *Id.* at 9.

### B.  Experian Dispute Letters and Responses

Steinmetz sent Experian several dispute letters about information included in an August 2017 consumer disclosure.  In that disclosure, the Chase tradeline was reported as "charged off" for multiple months. *Id.* at 23-24.  There was also no notation of the post-bankruptcy payments she was making on the SPS and American Honda tradelines. *Id.* at 26-27.  In addition, the American Honda tradeline was reported as having a $0 balance and being included in the June 2016 Chapter 13 bankruptcy. *Id.* at 27.  Further, Steinmetz's Synchrony Sams Club tradeline was reported as charged off and had a status of $492 written off. *Id.* at 19.

In October 2017, Steinmetz sent Experian a letter disputing information related to the Chase tradeline, among others. *Id.* at 18.  She sent a follow up letter in January 2018. *Id.* at 19.  Experian sent Steinmetz partial results of its reinvestigation in February 2018. *Id.*  In June 2018, Experian sent Steinmetz the results of its reinvestigation. *Id.* at 20.

In March 2018, Steinmetz sent Experian a letter disputing information related to the SPS tradeline. *Id.* at 27.  Experian sent her a reinvestigation report that same month. *Id.* at 29.  In May 2018, Steinmetz sent Experian a letter disputing information related to the American Honda tradeline. *Id.* at 27.  Experian sent her a reinvestigation report in June 2018. *Id.* at 29.

### C.  Allegations against Experian and American Honda

Steinmetz alleges that Experian reported inaccurate information about her after an unreasonable reinvestigation, in violation of 15 U.S.C. § 1681, *et seq*., and Nevada Revised Statutes (NRS) sections 598C *et seq*. and 41.600. *Id.* at 18-45, 59-60.  Steinmetz alleges that American Honda failed to accurately report post-bankruptcy payments and instead sent to CRAs

information that Steinmetz had a $0 balance and that the account was included in the June 2016 Chapter 13 bankruptcy, in violation of 15 U.S.C. § 1681s-2(b).

## II.  Requests for Judicial Notice and Filing Supplemental Authority

### A.  American Honda

American Honda requests that I take judicial notice of the exhibits attached to its motion, which include an order confirming Steinmetz's Chapter 13 plan, the Chapter 13 final account and report, and the bankruptcy court's order of discharge. ECF No. 47 at 7 n.1-2.  Steinmetz does not object.  As the documents are matters of public record, I take judicial notice of American Honda's exhibits. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

### B.  Steinmetz

Steinmetz requests that I take judicial notice of the exhibits attached to her response to Experian's motion to dismiss. ECF No. 50 at 2.  Experian does not object specifically to the use of the exhibits, though it does object to Steinmetz's use of testimony from other lawsuits. ECF No. 61 at 8.  "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  However, a court may consider other documents where (1) "the complaint necessarily relies upon the document" or (2) "the contents of the document are alleged in the complaint, the document's authenticity is not in question," and the document's relevance is not in dispute. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  A court may also "take judicial notice of adjudicative facts not subject to reasonable dispute." *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); Fed. R. Evid. 201(b).

1    I take judicial notice of exhibits 4-10 because the amended complaint necessarily relies

2  on the documents, which encompass dispute letters and reinvestigation results.  I decline to

3  consider exhibits 1 (an Experian File One Appendix from 2014), 2 (deposition of an Experian

4  witness from a different case), and 3 (multi-CRAs annual credit report request form) because

5  they do not fall into any of the exceptions, their relevance is in dispute, and they are not

6  necessary to my decision.  Any allegations included in the amended complaint itself that

7  reference the documents will be taken as true for the purposes of the motions to dismiss.

8      Steinmetz recently moved to file supplemental authority under Local Rule 7-2(g). *See*

9  ECF No. 112.  I grant Steinmetz's motion because it does not change any of my rulings in this

10 case.

11     **C.  Experian**

12     Experian likewise moves to file supplemental authority under Local Rule 7-2(g). ECF

13 No. 105.  It seeks to add *Eric Steinmetz v. American Honda Finance, et al.*, No. 2:19-cv-00064-

14 JCM-VCF, 2019 WL 4415090 (D. Nev. Sept. 16, 2019) as authority in support of its motion.

15 Steinmetz objects, arguing that the case was wrongly decided, a notice of appeal has been filed,

16 and that I should not find that ruling persuasive. ECF No. 106.  I grant Experian's motion.  Like

17 any other case decided in this district, I may use the decision as persuasive authority in support

18 of my decision but I am not bound by it.

19 **III.  Analysis**

20     In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken

21 as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v.*

22 *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not assume the truth

23 of legal conclusions merely because they are cast in the form of factual allegations. *See Clegg v.*

*Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. If I dismiss the complaint, I should grant leave to amend even if no request to amend is made "unless [I] determine[] that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted).

## A. Steinmetz's Claims Against Experian

Steinmetz brings her claims under the Fair Credit Reporting Act (FCRA) and Nevada law. She alleges that Experian violated FCRA §§ 1681e and 1681i because it reported inaccurate information in a consumer report and did not correct the information after a reinvestigation. She alleges that it is inaccurate to suppress post-bankruptcy payments that she made to creditors, to report accounts as charged off for multiple months, and to report inconsistent bankruptcy inclusion dates.

Steinmetz alleges that Experian violated §1681g by disclosing inaccurate information and by failing to disclose other information. She alleges that Experian reported inconsistent bankruptcy inclusion dates, failed to explain unspecified soft inquiries[2] in plain English, misrepresented that they send her information only to those with a permissible purpose, failed to

---

[2] In her amended complaint, Steinmetz describes soft inquiries as inquiries that are shared only with the consumer and not third parties. ECF No. 28 at 34. The soft inquiry section of Steinmetz's August 2017 disclosure states: "You may not have initiated the following inquiries, so you may not recognize each source. We report these requests to you only as a record of activities, and we do not include any of these requests on credit reports to others." ECF No. 50-6 at 14.

disclose behavioral data and the third parties that receive the data, and failed to disclose the sources of her name and address information.

Finally, Steinmetz alleges that Experian violated Nevada's consumer fraud statutes by making false representations that her information would be sent only for permissible purposes and that addresses do not affect credit scores.

### 1. Section 1681e and Section 1681i: Procedures and Reinvestigations

Section 1681e of the FCRA outlines CRA compliance procedures and requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." To bring a claim under this provision, "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

If a consumer disputes the accuracy of information in his file, § 1681i requires the CRA to "conduct a free and reasonable investigation within thirty days of a consumer informing the CRA of disputed information." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (citing 15 U.S.C. § 1681i(a)(1)(A)). To bring a claim under § 1681i, an actual inaccuracy must exist. *Id.*

"Thus, to sustain either a § 1681e or a § 1681i claim, a consumer must first make a prima facie showing of inaccurate reporting." *Id.* (quotations omitted). Reporting can be inaccurate if it is patently incorrect or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quotation omitted).

Steinmetz alleges Experian's reporting was inaccurate in numerous ways.[3]  She alleges that suppressing positive payment history is incorrect or misleading.  She alleges that reporting accounts as "charged off" for multiple months is incorrect or misleading.  And she alleges that reporting inconsistent bankruptcy-inclusion dates across several of her accounts is incorrect or misleading.

### a. Post-Bankruptcy Payments Made to Creditors

Steinmetz alleges that Experian failed to report payments she made on her American Honda and SPS accounts during and after her bankruptcy.  She also states that Metro 2 format guidelines[4] instruct CRAs to remove suppression codes associated with bankruptcy reporting so that ongoing payments can be reported on accounts that were discharged in bankruptcy.  She alleges that deviating from the Metro 2 guidelines made the reported information materially misleading.

Experian argues it had no obligation to report payment history for a discharged account where the consumer continues to make payments to avoid seizure of the underlying property.  Experian also argues that even if it were inaccurate, CRAs are not required to search through all bankruptcy proceedings to make judgments about which debts are included and are not required to include all existing, derogatory, or favorable information about a consumer in their reports.

---

[3] Experian argues in its motion that Steinmetz failed to identify any inaccuracy with regard to the Chase Mortgage and Dr. Leonards/Carol Wright accounts. ECF No. 37 at 5.  Steinmetz does not respond to this argument.  Accordingly, I grant that portion of Experian's motion as unopposed and I dismiss any claims pertaining to the accuracy of those accounts. LR 7-2(d).

[4] "Furnishers generally report their data to CRAs using an agreed-upon format, known as Metro 2.  Furnishers' Metro 2 reporting requirements are . . . published by the Consumer Data Industry Association (CDIA), a CRA trade association." *Shaw*, 891 F.3d at 752.

Finally, Experian argues that Steinmetz cannot premise her FCRA claim on allegations that a CRA deviated from the Metro 2 guidelines.

When a debtor makes all of her payments under her bankruptcy plan, "all debts provided for by the plan or disallowed under section 502 of this title" are discharged. 11 U.S.C. § 1328(a); *see also Reichardt v. Trans Union LLC*, No. CV-18-00223-TUC-RCC, 2019 WL 1359119, at \*2 (D. Ariz. Mar. 26, 2019). The Ninth Circuit has interpreted "'provided for' to include any debt when it is 'dealt with' in any manner and 'upon any terms,'" such as debts included in the plan that are not paid through a bankruptcy trustee. *Reichardt*, 2019 WL 1359119, at \*3 (citing *In re Gregory*, 19 B.R. 668, 669-70 (B.A.P. 9th Cir. 1982), *aff'd sub nom.* 705 F.2d 1118 (9th Cir. 1983)) (alterations omitted); *see also Rake v. Wade*, 508 U.S. 464, 473 (1993) (noting the "most natural reading of the phrase to 'provide for' by the plan is to 'make a provision for' or 'stipulate to' something in a plan") (alterations omitted).

Several courts have held that after a debt is discharged, a CRA may report a $0 balance on an account and need not continue to report post-bankruptcy payments because the debtor no longer has personal liability on the account. *See Schueller v. Wells Fargo & Co.*, 559 Fed. App'x 773, 737 (10th Cir. 2014).[5] I agree with this reasoning. Thus, it is not inaccurate to withhold information about payments made to accounts that were discharged in bankruptcy.

Steinmetz's attempts to distinguish her case from these cases are unavailing. She argues that she "continued to make payments on the American Honda and SPS accounts because they were not discharged in her bankruptcy." ECF No. 50 at 12. However, the American Honda and SPS debts were included in her Chapter 13 bankruptcy plan. ECF No. 28 at 8; *see also* ECF Nos.

---

[5] *See also Reichardt*, 2019 WL 1359119, at \*3; *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 674-75 (E.D. Penn. 2015); *Groff v. Wells Fargo Home Mortg., Inc.*, 108 F. Supp. 3d 537, 540-42 (E.D. Mich. 2015); *Steinmetz*, 2019 WL 4415090, at \*3.

47-2; 47-3.  This indicates that when Steinmetz's bankruptcy was discharged in July 2017, those debts were also discharged and Steinmetz no longer maintained personal liability on the loans. ECF No. 47-4.  Accordingly, Steinmetz has not plausibly alleged that withholding the post-bankruptcy payment history and reporting the account as having a $0 balance and being included in a bankruptcy is inaccurate because Experian had no legal obligation to report ongoing positive payments on an account that was discharged in bankruptcy. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("[T]he very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer.") (quotation omitted) (alteration in original).

Steinmetz also argues that diverting from the Metro 2 guidelines made the information materially misleading. ECF No. 50 at 11.  She argues that a CRA's deviation from industry guidelines is "materially misleading where (1) the CRA adopts the standard, (2) the CRA deviated from the standard, and (3) this 'deviation might adversely affect credit decisions—in other words, that entities would have expected the defendant CRA to report in compliance with the 2015 Metro 2 guidelines." *Id.* (citing *Nissou-Rabban v. Capital One Bank (USA), N.A.*, No. 15-cv-1675-JLS-DHB, 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (alterations omitted)). In *Nissou-Rabban*, the court found that if a plaintiff plausibly alleges the above elements, the complaint survives a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. 2016 WL 4508241, at *5.

However, many district courts in this circuit "have distinguished or disagreed with *Nissou-Rabban*" and have found that "at most *Nissou-Rab[b]an* stands for the proposition that a furnisher that reports delinquent debts during the pendency of a bankruptcy should also report the fact that the bankruptcy is pending so that creditors know that those delinquent debts may be

discharged in the future." *Devincenzi v. Experian Info. Sols., Inc.*, No. 16-cv-04628-LHK, 2017 WL 86131, at *6 (N.D. Cal. Jan. 10, 2017).[6] I adopt the majority approach here because Steinmetz's accounts were discharged through her Chapter 13 bankruptcy and because Experian accurately reported that her American Honda and SPS accounts were discharged through bankruptcy and had a $0 balance. ECF No. 28 at 26-27; *see also* ECF No. 50-7 at 10, 12.

In sum, it was not inaccurate to exclude the post-bankruptcy payments Steinmetz was making on her SPS and American Honda accounts and to report the accounts as having been discharged in bankruptcy and having a $0 balance. Because there was no inaccuracy, these allegations cannot support a claim under sections 1681e or 1681i.

### b. Reporting Accounts as "Charged Off" for Multiple Months

Steinmetz alleges that Experian incorrectly reported the Chase tradeline as "charged off" multiple times between July 2015 and May 2016 because "the account can only be charged off once."[7] ECF No. 28 at 24. Experian argues reporting a charge off in multiple months is not inaccurate and there is nothing to indicate that anyone would believe there has been more than one charge off. It argues reporting multiple charge offs in one account is not misleading in such a way that it can be expected to adversely affect credit decisions. Steinmetz responds that courts

---

[6] *See also Cardinali v. Plusfour, Inc.*, No. 2:16-cv-02046-JAD-NJK, 2019 WL 4723071, at *12 (D. Nev. Sept. 26, 2019); *Uehara v. TD Bank, Nat'l Ass'n*, 2:17-cv-00190-GMN-CWH, 2018 WL 1472712, at *5 (D. Nev. Mar. 26, 2018); *Anderson v. Experian Info. Sols. Inc.*, No. 16-cv-03328-BLF, 2017 WL 914394, at *6 (N.D. Cal. Mar. 8, 2017) ("[D]istrict courts within the Ninth Circuit overwhelmingly have held that a violation of industry standards is insufficient, without more, to state a claim for violation of the FCRA.").

[7] Steinmetz also alleges in her amended complaint that Experian reported multiple charge offs on her Synchrony Sams Club tradeline, as well as having a status of $492 written off. Experian argues in its motion that Steinmetz does not mention this account again and thus does not state a claim based on this account in her amended complaint. ECF No. 37 at 5 n.1. Steinmetz does not respond to this argument. I therefore grant that portion of Experian's motion as unopposed. LR 7-2(d).

presuppose that discovery will be necessary before determining whether reporting an account as charged off for multiple months is inaccurate.

A creditor charges off a debt when it treats the debt "as a loss or expense because payment is unlikely." Black's Law Dictionary (11th ed. 2019). Here, both parties appear to agree that an account can be charged off only once. ECF Nos. 28 at 23-24; 37 at 4-5. However, Steinmetz has not plausibly alleged that reporting an account as charged off in the payment history over multiple months is incorrect or misleading. Steinmetz provides no authority to support her claim that reporting multiple charge offs is incorrect. She instead cites to *Nissau-Rabban* to support the proposition that such reporting "might be misleading." ECF No. 50 at 8. *Nissau-Rabban* found, however, that reporting charge offs for multiple months "was neither patently incorrect nor misleading."[8] 2016 WL 4508241, at *4 (quotations omitted). The plaintiff in that case filed her bankruptcy petition in November 2014 and had an account that was reported as charged off from December 2014 through January 2015. *Id.* The court reasoned that because the debt was not discharged until February 2015, it was not inaccurate to list the account as charged off for the months preceding the discharged date. *Id.* The same reasoning applies here.

Steinmetz's payment history shows that the account was 180 days past due in June 2015. ECF No. 50-7 at 10. The account was then charged off in July 2015. *Id.* The account also was reported as having a $0 balance as of June 2017 and having a status of "discharged through Bankruptcy Chapter 13." *Id.* Steinmetz has not plausibly alleged that anyone would be misled in such a way to adversely affect credit decisions when the account shows exactly when its status changed from past due to charged off and also notes that it was discharged through Chapter 13

---

[8] The portion of the opinion that Steinmetz relies on focuses on whether it would be misleading to not follow industry standards (discussed above), not on whether reporting multiple charge offs itself is misleading.

bankruptcy. *See Shaw v. Equifax Info. Sols. Inc.*, 204 F. Supp. 3d 956, 961 (E.D. Mich. 2016) ("[T]here is nothing to indicate . . . that anyone would believe there has been more than one charge off because, as all parties agree, there is only one charge off event."). Thus, it was not inaccurate for Experian to report the Chase tradeline as charged off for the months preceding the date her bankruptcy was discharged. Steinmetz cannot state a claim under sections 1681e or 1681i based on these allegations.

### c. Inconsistent Bankruptcy-Inclusion Dates

Steinmetz alleges that Experian's August 2017 consumer disclosure did not report bankruptcy-inclusion dates uniformly, in violation of § 1681e(b). Steinmetz alleges that Experian notes in the account history section of a tradeline whether it was incorporated in a consumer's bankruptcy by listing the date the bankruptcy petition was filed. ECF No. 28 at 32. She alleges that the American Honda tradeline had a bankruptcy date of July 19, 2017, the Capital One tradeline had a date of July 3, 2016, and the Chase tradeline had a date of June 30, 2016. *Id.* at 33. She alleges that only the Chase tradeline listed the accurate bankruptcy petition date. *Id.* Steinmetz alleges that these inaccuracies impact the length of time that accounts would be reported as negative, had the tendency to confuse an ordinary consumer, and damaged her creditworthiness because accounts are reported as negative for up to seven years.

Experian argues that the differing dates were minor internal inconsistencies and were not inaccurate because they cannot be expected to adversely impact credit decisions. It argues Steinmetz cannot plausibly allege she suffered a cognizable injury because of inconsistent bankruptcy inclusion dates, rather than the fact of the bankruptcy itself. It also argues that this information appears only on disclosures sent to the consumer, not on consumer reports sent to

third parties.  In response, Steinmetz argues that Experian cites to no controlling authority to support the proposition that these discrepancies should be disregarded.

Even if reporting different bankruptcy inclusion dates is inaccurate, Steinmetz's § 1681e claim fails because she has not plausibly alleged that this information was produced in a consumer report, as opposed to a consumer disclosure.  "To bring a § 1681e claim, the 'consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information.'" *Shaw*, 891 F.3d at 755.  Section 1681a defines a consumer report as "any written, oral, or other communication of any information by a CRA bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part" for the purpose of serving as a factor in establishing the consumer's eligibility for a) credit or insurance, b) employment purposes, or c) any other purpose authorized under § 1681b.

"If a consumer reporting agency provides a report based on a reasonable expectation that the report will be put to a use permissible under the FCRA, then that report is a 'consumer report' under the FCRA and the ultimate use to which the report is actually put is irrelevant to the question of whether the FCRA governs the report's use and the user's conduct." *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1274 (9th Cir. 1990).  A CRA's disclosure of files prepared for the consumer is "separate and distinct from a consumer credit report prepared for third parties." *Larson v. Tran Union, LLC*, No. 12-cv-05726-WHO, 2013 WL 55656329, at *4 (N.D. Cal. Oct. 15, 2013).  "Courts expressly caution against conflating [consumer disclosures and consumer reports] when interpreting the FCRA." *Id.* (citing cases).

Here, Steinmetz objects to the alleged inaccuracies specific to her August 2017 consumer disclosure, not to any consumer reports that Experian provided to third parties.  She has not plausibly alleged that anyone received the disclosure except for her or that Experian has sent or intends to send that disclosure to third parties.  Merely stating that a consumer disclosure is a consumer report because every item of information on a consumer disclosure might be provided on a consumer report is insufficient. *See Diaz v. Chase*, 416 F. Supp. 3d 1090, 1096 (D. Nev. 2019) ("Because a consumer disclosure is not a consumer report pursuant to the FCRA, Diaz's Section 1681e(b) claim fails.").  Thus, Steinmetz cannot state a claim under § 1681e for inaccurate reporting because she has not plausibly alleged that any inaccuracies were included in a consumer report.

In sum, all of Steinmetz's claims under sections 1681e and 1681i fail because she has not plausibly alleged there was inaccurate reporting or that the information she disputed was provided in a consumer report.

## 2.  Section 1681g: Disclosures

Section 1681g(a) provides in part that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer . . . [a]ll the information in the consumer's file at the time of the request."[9]  A consumer's file "includes all information on the consumer that is recorded and retained by a [CRA] that might be furnished, or has been furnished, in a consumer report on that consumer." *Shaw*, 891 F.3d at 759 (quotation omitted) (alteration in original).

---

[9] Steinmetz also brings claims under Nevada's state law equivalent, which states that a CRA shall "[c]learly and accurately disclose to the consumer the nature and substance of the consumer report in its files . . . and disclose the names of the institutional sources of information." Nev. Rev. Stat. § 598C.130(1).

A CRA "must do more than simply make an accurate disclosure of the information in the consumer's credit file." *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007). The disclosure must be "sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in her credit file." *Id.*; *see also Shaw*, 891 F.3d at 760.

In contesting information, a plaintiff must show that the CRA "included similar information in a consumer report in the past or that it plans to do so in the future." *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007). In *Gillespie*, the court noted that "Congress, it seems, chose to limit the right to contest information to material actually contained in consumer reports. And of course it was free to draw the line as it did." *Id.* at 910.

Steinmetz alleges the following violations: (1) failing to report bankruptcy inclusion dates uniformly; (2) failing to explain unspecified soft inquiries in plain English and misrepresenting that the inquires were allowed only for a permissible purpose under the FCRA; (3) failing to disclose behavioral data and the third parties that receive such data; and (4) failing to disclose the sources of name and address information contained in her file.

Experian argues that Steinmetz fails to plausibly allege that its disclosures were not objectively understandable to the average consumer or that Steinmetz herself was confused. Experian argues that Steinmetz did not plausibly allege that the differing bankruptcy inclusion dates might be furnished or has been furnished to third parties for credit-related purposes or that she was confused by that reporting. It also argues that Steinmetz cannot plausibly allege that Experian has furnished or might furnish soft inquiries to third parties because soft inquiries are

shared only with the consumer.  And Experian argues that it was not required to disclose the permissible purpose each third party had when it requested her credit information.

As to behavioral data, Experian argues that Steinmetz lacks standing because she fails to allege an injury, and even if she had standing she does not sufficiently allege that OmniView, ConsumerView, TrueTouch, and MetroNet are credit products regulated by the FCRA or that these products are used to make credit eligibility determinations which is necessary to trigger § 1681g.  It also argues that Experian Marketing Services, a separate entity, provides those products.  Finally, Experian argues that Steinmetz never alleges that she requested the sources of her address or name information or that she suffered any harm due to Experian's alleged failure to disclose said sources.

I grant Experian's motion to dismiss these claims.  While Steinmetz does not allege in her amended complaint that she requested a consumer disclosure from Experian, she alleges that the August 2017 disclosure, the February 2018 reinvestigation, the March 2018 reinvestigation, and the June 2018 reinvestigation are disclosures subject to § 1681g.  For the purposes of this motion, I will take as true Steinmetz's representations that these are disclosures.

*a. Bankruptcy Inclusion Dates*

Steinmetz has not plausibly alleged that Experian included the alleged inconsistent bankruptcy inclusion dates in a consumer report.  Her allegation is that the bankruptcy inclusion dates were included in her disclosures and that those disclosures amount to consumer reports. But Steinmetz's consumer disclosures are not consumer reports.  Accordingly, Steinmetz has not plausibly alleged that the disputed information was in a consumer report sent to a third party or that Experian intends to send that information to a third party.

Steinmetz also has not plausibly alleged that an ordinary consumer would be unable to determine the accuracy of that information in the August 2017 disclosure. Steinmetz stated in her amended complaint that Experian's disclosures to her "all reported the fact of [her] Chapter 13 bankruptcy accurately as having been [filed] in June 2016, resolved in July 2017, and having a status of discharged." ECF No. 28 at 32. She was able to compare the information provided in the specific tradelines with the original information listing the accurate bankruptcy dates, as well as her personal knowledge of her bankruptcy dates, and conclude that she believed the dates on the tradelines were inconsistent. Thus, the disclosure allowed her to determine the accuracy of the information in her file. *Shaw*, 891 F.3d at 760. Accordingly, Steinmetz cannot state a § 1681g claim based on this allegation.

### b. Behavioral Data

Steinmetz alleges that Experian "amasses and maintains an enormous amount of 'behavioral' data on consumers, such as household income, purchase history, employment history, education history, type of residence, and even whether an individual is a 'dog' or 'cat' person." ECF No. 28 at 37. She alleges that Experian created and used "credit products" known as OmniView, ConsumerView, TrueTouch, and MetroNet to market behavioral data to third parties. *Id.* at 28 at 37-39. She alleges that information from these databases can be included in a consumer report. *Id.* at 38. Steinmetz also alleges that Experian sells a suite of services, called "collection advantage," which permits the user to combine data from different Experian databases. *Id.* at 38. Steinmetz alleges that Experian has provided behavioral data, either directly or indirectly, to third parties who in turn sell the data to third party credit decision-makers. *Id.* at 39. And she alleges that Experian failed to include information about her behavioral data in her disclosures, in violation of § 1681g.

Steinmetz cannot prevail on this §1681g claim because she has not plausibly alleged that Experian specifically maintains and distributes her behavioral data. Steinmetz alleges "on information and belief" that TrueTouch has her information because it is advertised as having data on more than 300 million individuals. ECF No. 28 at 38. She does not address whether the other databases she names contain her information.

"The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). But the facts Steinmetz includes in support of her allegation are too speculative to arrive at the conclusion that Experian must maintain her behavioral data. There is nothing specific to link Steinmetz's behavioral data to any of the databases apart from one database's advertisement that it maintains millions of persons' data. Further, had Steinmetz received a consumer report or disclosure that included her behavioral data, or learned from a third party that they received her behavioral data in a consumer report, then she would have been able to plead facts to support her allegations that Experian maintains and distributes her behavioral data to third parties.

Steinmetz does not allege that Experian has provided this behavioral data in consumer reports to third parties. Her amended complaint states that Experian provides behavioral data, either directly or indirectly, to third parties who in turn sell the data to other credit decision-makers. Thus, there appears to be an additional degree of separation between Experian's conduct and a party seeking information for credit-related purposes.

Steinmetz alternatively alleges that if Experian does not store its behavioral data itself then Experian violated § 1681g(a)(3) and NRS § 598C.130, which require a CRA to disclose the

names of all persons who procured a consumer report, because Experian did not disclose to Steinmetz that it transmitted her behavioral data to third parties. ECF No. 28 at 40. Experian argues that Steinmetz has not alleged that she requested information about her behavioral data or that Experian ever transmitted behavioral data to third parties. It also argues that Steinmetz cannot plausibly allege that Experian included behavioral data in a consumer report. Steinmetz responds that transmission of information from Experian to a third party would constitute a consumer report and because Experian Marketing, the purported third party that stores behavioral data, does not appear in the disclosure, Experian violated § 1681g(a)(3) and NRS § 598C.130.

While Steinmetz's argument is not entirely clear, I take it that she alleges that Experian collected behavioral data and gave that data to a third party, such as Experian Marketing. But, as described above, Steinmetz has not plausibly alleged that whatever Experian allegedly sends to third parties is a consumer report that is given to third parties for credit-related purposes, or that Experian has collected her specific behavioral data. Accordingly, this alternative theory fails as well.

In sum, Steinmetz has failed to state a §1681g or state law claim because she has not plausibly alleged that these databases store her behavioral data or that Experian has provided, or will provide, her behavioral data in a consumer report sent to third parties for credit-related purposes.

### c. Soft Inquiries and Permissible Purpose

Steinmetz alleges that Experian failed to explain why particular soft inquiries had been made. However, she does not plausibly allege that soft inquiries were included in a consumer report or will be included in a consumer report in the future. Further, courts have found that soft

inquiries are not shared with third parties. *See* ECF No. 37 at 17 (citing cases). Experian therefore was not required to share or explain the reason why those inquiries had been made.

Steinmetz also alleges that Experian misrepresented in its disclosures to her that it offers credit information only to those with a permissible purpose. She alleges that Experian provides credit information in a consumer report known as a "Bullseye," which contains information from a variety of sources, including the consumer, a third-party furnisher, and Experian. ECF No. 28 at 36. She alleges that Experian does not require a permissible purpose before a Bullseye report is provided. *Id.* She cites to an Experian response to interrogatories from another case as factual support for this claim. *Id.* at 36 n.38. However, in that case, Experian explained that "a Bullseye report only reflects information provided to Experian by the requesting data furnisher. Only an Experian data furnisher that reports data to Experian can request a Bullseye report, which will only contain trade data reported by that furnisher." *Nichols v. Experian*, No. 2:17-cv-2337-APG-EJY, at ECF No. 51-4, p. 29 (D. Nev. Sept. 4, 2018). Experian further explained that it "does not require a subscriber to identify a permissible purpose each time it accesses a Bullseye report, because each subscriber only has access to *its own reported data.* Experian's Bullseye report is not a 'consumer report,' as Experian only returns the subscriber's *own reported data.* Experian's Bullseye report is a data verification tool . . . ." *Id.* at p. 31 (emphasis in original).

Steinmetz cannot plausibly state a claim based on her allegation that a Bullseye report is a consumer report. The authority she cites in support shows that a Bullseye report is not a credit report sent to third parties to make credit-related decisions, but rather a verification tool to allow furnishers to view and verify their previously reported data for a particular consumer. *Id.* Steinmetz does not allege that allowing furnishers to view their previously reported data on a consumer is an impermissible purpose under the FCRA, likely because the FCRA imposes duties

on furnishers to report accurate information and to correct and update any information reported. *See, e.g.*, 15 U.S.C. § 1681s-2.  Accordingly, Steinmetz has not plausibly alleged that Experian violated §1681g(a)(1) in this way.

### d. Sources of Name and Address Information

Finally, Steinmetz has not plausibly alleged that Experian failed to adequately disclose the sources of its names and addresses.  Section 1681g(a)(2) provides that a CRA must disclose, upon request, the sources of information contained in a consumer's file.  Steinmetz alleges that Experian did not identify the sources of the name and address information "in plain English" and that Experian used "cryptic, numeric codes" which deprived her of the ability to determine its accuracy. ECF No. 28 at 41.  However, her amended complaint does not allege she requested the source information from Experian, so she cannot assert a § 1681g(a)(2) violation. *See Diaz*, 416 F. Supp. 3d at 1097 (dismissing without prejudice Diaz's failure-to-disclose claim because "Diaz does not allege that he requested Experian to include the sources or the name of each person that procured a consumer report").

Even assuming that Steinmetz requested the source information, she fails to plausibly allege that the information she received was not clear or accurate.  Steinmetz alleges that "Experian identified the sources through cryptic, numeric codes, which deprived Plaintiff of any ability to determine its accuracy." ECF No. 28 at 41.  However, she further states that Experian explain that it stores address information as it is sent to Experian by Steinmetz's credit grantors or from information contained in public records. *Id.*  Thus, Steinmetz admits that Experian provided sources for this information by stating that the names and address information come from credit grantors or from public records.

Steinmetz alleges that the explanations Experian provided about the sources of information confused her and frustrated her ability to follow up with those sources to dispute inaccurate information. But § 1681g requires only that a CRA provide clear and accurate information so that a consumer can "check the accuracy of the information possessed by a consumer reporting agency." *Gillespie*, 484 F.3d at 940. Steinmetz has not alleged that Experian frustrated her ability to check the accuracy of the information it maintains on her because she never alleged that any of the name and address information was inaccurate.

Thus, Steinmetz's amended complaint fails to plausibly allege that Experian did not identify the sources of the name and address information in a clear and accurate way.

### 3. State Law Consumer Fraud Claims

Steinmetz alleges that Experian violated NRS sections 41.600, 598.0915, and 598.0923(3) when it made a false representation that her consumer data would be sent to third parties only for permissible purposes and when it made a false representation that addresses do not affect credit scores.

Section 41.600 allows an action to be brought by any person who is a victim of consumer fraud. Relevant here, the statute defines consumer fraud as "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." NRS § 41.600(2)(e). The statutory sections that Steinmetz relies on in her amended complaint, NRS §§ 598.0915 and 598.0923(3), deal with the sale or lease of goods or services.

Experian argues that Steinmetz's consumer fraud claims fail because they do not satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. It also argues that her claims do not relate to the sale of goods or services. Steinmetz responds that her claims do not require goods to be sold, but rather require conduct involving goods and services. She argues

that providing consumer disclosures and reinvestigation reports is a good, and conducting the reinvestigation is a service.

Steinmetz's claims deal with consumer reporting requirements, not the sale of goods or services. The Nevada legislature adopted a separate statute dedicated entirely to consumer reporting and Steinmetz has pleaded several of her claims under that statute. *See generally* Nev. Rev. Stat. § 598C ("Consumer Reporting"). Steinmetz cannot plead claims arising from consumer reporting disputes under Nevada's deceptive trade practices law. *Alexander v. Aurora Loan Servs.*, No. 2:09-cv-1790-KJD-LRL, 2010 WL 2773796, at *2 (D. Nev. Jul. 8, 2010) (dismissing plaintiff's claims under Nevada's deceptive trade practices act because the claims pertained to lending practices and so were covered by a separate Nevada statute). I therefore dismiss Steinmetz's state law claims.

### 4. Conclusion

In sum, Steinmetz has not plausibly alleged facts to support her claims against Experian under FCRA §§ 1681e, 1681i, 1681g, and Nevada law. Steinmetz fails to allege an actual inaccuracy. She fails to plausibly allege that an inaccuracy was included, or will be included, in a consumer report sent to third parties for credit-related purposes. And she fails to plausibly allege that Experian did not provide her with all the information in her file in a clear and accurate way. Further, Steinmetz cannot bring claims under Nevada's deceptive trade practices act because her claims are covered by Nevada's consumer reporting laws. Accordingly, I grant Experian's motion to dismiss.

/ / / /

/ / / /

/ / / /

### B. Steinmetz's Claims Against American Honda

FCRA § 1681s-2(b) provides that a furnisher, upon receiving notice that a consumer disputes the accuracy of information provided to a CRA, shall conduct an investigation regarding the disputed information, review all relevant information provided by the CRA, and report the results of its investigation to the CRA. It also requires that, if the investigation finds incomplete or inaccurate information, the furnisher must report the results to all other CRAs that it furnished that information to and modify, delete, or permanently block reporting the disputed information that is inaccurate, incomplete, or unverifiable. 15 U.S.C. § 1681s–2(b)(1)(D) and (E). "These duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

To state a claim, Steinmetz must plausibly allege that the information American Honda furnished was incomplete or inaccurate. *See id.* "An item on a credit report can be incomplete or inaccurate . . . because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012) (alterations and citation omitted). "A furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s–2(b) simply by failing to report a meritless dispute . . . . It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s–2(b)." *Id.* at 1164.

Steinmetz alleges that American Honda failed to properly investigate and correct her dispute that the American Honda tradeline should be reporting positive payment history. She also alleges that American Honda failed to properly investigate and correct her dispute that the

American Honda tradeline should not be reported as having a $0 balance and being included in her June 2016 Chapter 13 bankruptcy. American Honda argues that it had no obligation to report payments that Steinmetz made post-bankruptcy, so Steinmetz has not plausibly alleged inaccurate or incomplete reporting by American Honda.

The allegations against American Honda are identical to one of Steinmetz's allegations against Experian. *See supra* IIIA1a. As discussed above with respect to Experian, it is not inaccurate to withhold from a report continuing payments made to an account that was discharged in bankruptcy. Thus, American Honda had no obligation to report Steinmetz's post-bankruptcy payments made to her account and accurately reported Steinmetz's account as having a $0 balance and being included in her Chapter 13 bankruptcy. Accordingly, I grant American Honda's motion to dismiss.

### C.  Leave to Amend

Steinmetz asks that, if I dismiss any of her claims, I grant her leave to amend under Federal Rule of Civil Procedure 15(a)(2) to "cure those pleading defects in an amended pleading." ECF No. 50 at 25; ECF No. 87 at 6. Experian argues that Steinmetz already had an opportunity to amend and has failed to allege additional facts that would save her claims. It argues Steinmetz's claims are based on a misunderstanding of the law. American Honda argues amendment would be futile because Steinmetz has failed to identify any facts under which she could state a claim for relief against it.

"Leave to amend a party's pleading pursuant to Rule 15(a) of the Federal Rules of Civil Procedure "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a). Amendment generally should be denied "only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d

1143, 1152 (9th Cir. 2011). "Rule 15(a) is designed to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.* (citation omitted).

I deny leave to amend because amendment would be futile. Steinmetz's amended complaint relies on factual allegations that Experian and American Honda reported inaccuracies when they did not. Steinmetz also improperly conflates consumer disclosures and consumer reports, which is fatal to her claims. As for her § 1681g claims, Steinmetz fails to plausibly allege that Experian's disclosures were unclear or inaccurate, or lacked information in her file that would be included in a consumer report sent to third parties. Finally, Steinmetz's additional state law claims under Nevada's deceptive trade practices act fail because that act does not apply to her allegations.

Steinmetz has had sufficient notice of these deficiencies to correct them if she could. Experian raised these issues in her motion to dismiss. ECF No. 14. Steinmetz filed an amended complaint that was nearly identical to her first complaint. If she had other facts to cure the deficiencies in her pleading, she would have included them in her amended complaint. In response to the defendants' motions to dismiss, Steinmetz has not indicated that she has additional facts to support her claims other than what she has now twice alleged. Accordingly, Steinmetz's claims are dismissed with prejudice.

## IV.  CONCLUSION

I HEREBY ORDER the clerk of court to correct the caption to appropriately name the defendants as American Honda Finance Corporation and JPMorgan Chase Bank, N.A.

I FURTHER ORDER that defendant Experian Information Solutions, Inc.'s motion for leave to file supplemental authority **(ECF No. 105) is GRANTED.**

I FURTHER ORDER that plaintiff Jacqueline Steinmetz's motion for leave to file supplemental authority **(ECF No. 112) is GRANTED.**

I FURTHER ORDER that defendant Experian Information Solutions, Inc.'s motion to dismiss **(ECF No. 37) is GRANTED with prejudice.** The clerk of court is instructed to enter judgment in favor of defendant Experian Information Solutions, Inc. and against plaintiff Jacqueline Steinmetz. Experian Information Solutions, Inc. is dismissed from this case.

I FURTHER ORDER that defendant American Honda Finance Corporation's motion to dismiss **(ECF No. 47) is GRANTED with prejudice.** The clerk of court is instructed to enter judgment in favor of defendant American Honda Finance Corporation and against plaintiff Jacqueline Steinmetz. American Honda Finance Corporation is dismissed from this case.

DATED this 20th day of March, 2020

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE